Bruce Salzburg
Attorney General

Jay Jerde
Deputy Attorney General

Robert Nicholas
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, WY 82002
Telephone: (307) 777-3406
Facsimile: (307) 777-3542
Email: bnicho@state.wy.us

Attorneys for Petitioner State of Wyoming

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| STATE OF WYOMING, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 07-CV-017-B |
| | ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al., | ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and the WYOMING OUTDOOR COUNCIL, et al., | ) ) | |
| | ) | |
| Intervenors. | ) | |

---

## STATE OF WYOMING'S REPLY BRIEF

---

## **TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS ............................................................... i

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................... 3

    I.     Standing .......................................................................... 3

    II.    The 2001 Roadless Rule was Promulgated in Violation of NEPA ......................... 5

          A.    The Forest Service Violated NEPAs Scoping Requirements ..................... 6

          B.    The Forest Service's Refusal to Grant Cooperative Agency Status Violated NEPA ............................................................... 9

          C.    The Forest Service Refused to Consider Reasonable Alternatives ........... 10

          D.    The Forest Service Did Not Adequately Consider the Cumulative Impacts of the 2001 Roadless Rule ........................................... 13

          E.    The Forest Service was Obligated to Complete a Supplemental EIS ....... 16

          F.    NEPA Requires Specific Environmental Analysis of the Affected Area .................................................................. 19

    III.   The 2001 Roadless Rule Violates the Wilderness Act ......................... 22

    IV.   The 2001 Roadless Rule Violates the Wyoming Wilderness Act ....................... 23

    V.    The 2001 Roadless Rule is Contrary to the NFMA ............................. 24

    VI.   Enjoining the 2001 Roadless Rule Nationwide is Required ................... 25

    VII.  Enjoining the 2001 Roadless Rule is Consistent with Comity Principles ............ 26

i

CONCLUSION ...................................................................................................... 29

CERTIFICATE OF SERVICE ............................................................................... 30

EXHIBIT 1: Affidavit of Bill Haagenson .............................................................. 32

## TABLE OF AUTHORITIES

**CASES:**                                                                       **PAGES**

*Amoco Prod. Co. v. Village of Gambell*
    480 U.S. 531 (1987) ................................................................................ 26

*Ass'ns Working for Aurora's Residential Env't v. Colorado Dep't of Transp.,*
    153 F.3d 1122 (10th Cir. 1998) ............................................................. 20

*California v. Block,*
    690 F.2d 753 (9th Cir. 1982) ............................................................ 7, 19

*California ex rel. Lockyer v. U. S. Dep't of Agric.,*
    459 F.Supp.2d 874 (N. D. Cal. 2006) ............................................. 2, 27, 28

*Chrysler Corp. v. Brown,*
    441 U.S. 281 (1979) ................................................................................ 26

*Citizens Comm. to Save Our Canyons v. U. S. Forest Serv.,*
    297 F.3d 1012 (10th Cir. 2002) ............................................................. 11

*Colorado Envtl. Coal. v. Dombeck,*
    185 F.3d 1162 (10th Cir. 1999) ............................................................. 11

*Conservation Law Found. of New England v. Gen. Serv. Admin.,*
    707 F.2d 626 (1st Cir. 1983) ................................................................. 20

*Davis v. Mineta,*
    302 F.3d 1104 (10th Cir. 2002) ............................................................. 11

*Forest Guardians v. Babbitt,*
    174 F.3d 1178 (10th Cir. 1999) ............................................................. 26

*Friends of Marolt Park v. U. S. Dep't of Transp.,*
    382 F.3d 1088 (10th Cir. 2004) ............................................................... 3

*Kootenai Tribe of Idaho v. Veneman,*
    142 F.Supp.2d 1231 (D. Idaho 2001) ................................................. 5, 8

*Kootenai Tribe of Idaho v. Veneman*,
　　313 F.3d 1094 (9th Cir. 2002) ............................................................... 5, 18, 23

*Lee v. United States Air Force*,
　　354 F.3d 1229 (10th Cir. 2004) ................................................................ 20

*N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*,
　　248 F.3d 1277 (10th Cir. 2001) ................................................................ 26

*Parker v. United States*,
　　309 F.Supp. 593 (D.Colo. 1970) ............................................................. 22

*Parker v. United States*,
　　448 F.2d 793 (10th Cir. 1971) ................................................................. 25

*S. Utah Wilderness Alliance v. Norton*,
　　301 F.3d 1217 (10th Cir. 2002) ............................................................... 25

*Sierra Club v. U. S. Dep't of Energy*,
　　287 F.3d 1256 (10th Cir. 2002) ................................................................. 3

*Sierra Club v. Peterson*,
　　717 F.2d 1409 (D.C. Cir. 1983) ............................................................... 20

*Tenn. Valley Auth. v. Hill*,
　　437 U.S. 153, 194 (1978) ......................................................................... 26

*Wachovia Bank v. Schmidt*,
　　546 U.S. 303 (2006) ................................................................................ 24

*Watt v. Alaska*,
　　451 U.S. 259 (1981) ................................................................................ 24

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
　　751 F.2d 721 (5th Cir. 1985) ................................................................... 27

*Wyoming v. United States Dept of Agric.*,
　　277 F.Supp.2d 1197 (D. Wyo. 2003) (cited as *Roadless I*) ...................... passim

*Wyoming Timber Industry Ass'n v. U. S. Forest Serv.*,
    80 F.Supp.2d 1245 (D. Wyo.2000) ............................................................. 24, 25

## STATUTES

**Federal Statutes**

16 U.S.C. § 1131(a) ............................................................................... 22

16 U.S.C. § 1604 ................................................................................... 18

16 U.S.C. § 1604(d), (f) ........................................................................ 24

**Federal Regulations**

36 C.F.R. §  212.5(b) ............................................................................ 15

40 C.F.R. § 1501.2(b) ........................................................................... 20

40 C.F.R. § 1501.6 ...................................................................... 7, 9, 10

40 C.F.R. § 1501.7(a)(1) ......................................................................... 7

40 C.F.R. §1502.16 .............................................................................. 20

**Federal Register Notices**

65 Fed. Reg. 67514 (2000) ..................................................................... 13

66 Fed. Reg. 3206-07 (2001) .................................................................. 13

66 Fed. Reg. 3219-41 (2001) .................................................................. 13

66 Fed. Reg. 3245-3272 (2001) ........................................................... 2, 20

**Acts**

Wyoming Wilderness Act of 1984
    Pub L. No. 98-550 § 401(b)(3), (5) ................................................... 2, 23

## INTRODUCTION

Nothing has changed since July 2003 that warrants this Court reversing its findings in *Wyoming v. United States Dep't of Agric.*, 277 F.Supp.2d 1197 (D. Wyo. 2003) (*"Roadless I"*). The supplemental brief of the Forest Service does not set forth any new law and does not allege new facts or raise new arguments that were not already argued and briefed before this Court in *Roadless I*. Similarly, the Intervenor's (jointly referred to as "WOC") recently filed Opposition Brief ("WOC Br.") presents the same arguments set forth in their original briefs filed in *Roadless I*. Although WOC asserts that this Court's *Roadless I* decision was "radically out of step with [established] case law," its Opposition Brief studiously ignores and side steps this Court's specific factual findings and legal conclusions in *Roadless I*. This Court's exhaustive review and legal analyses in *Roadless I* encapsulate the Clinton Administration's complete disregard of the National Environmental Policy Act ("NEPA") process for political convenience.

The legal and factual presentations set forth in the State of Wyoming's ("Wyoming's") opening and responsive briefs in *Roadless I* are still accurate and dispositive of all the issues before the Court in this case. The 2001 Roadless Rule was promulgated in violation of NEPA. The Forest Service did not take a hard look at all the environmental consequences that would result from the 2001Roadless Rule and refused to adequately inform itself or the public of the impacts of the Rule, and refused to consider any reasonable alternatives in order to issue the Record of Decision before President Clinton left office. The Forest Service also violated the

Wilderness Act, the Wyoming Wilderness Act ("WWA") and the Administrative Procedure Act ("APA"). The 2001 Roadless Rule is contrary to the policies and procedures established in the National Forest Management Act ("NFMA") and the Multiple Use and Sustained Yield Act ("MUSYA").

Wyoming continues to have standing to pursue this litigation and continues to suffer irreparable harm caused by the resurrection of the 2001 Roadless Rule. Wyoming forest lands adjacent to national forests are injured by the Roadless Area Conservation Rule ("2001 Roadless Rule"). 66 Fed. Reg. 3245-3272 (Jan. 12, 2001). The 2001 Roadless Rule does not allow the Federal Defendants (jointly referred to as the "Forest Service") to actively manage national forests which increases fire risk and fosters the spread of beetle infestation. The harm Wyoming suffers will continue so long as the 2001 Roadless Rule is in effect and the damage worsens the longer the rule is in effect. The Forest Service admits that the 2001 Roadless Rule causes irreparable harm, not only in Wyoming, but nationwide. Filings by other interested parties in this proceeding, the *amicus briefs* filed in the appeal of *Roadless I*, and the attachments to Wyoming's briefs demonstrate the nationwide harm caused by the 2001Roadless Rule and the need for injunctive relief. Enjoining the 2001 Roadless Rule does not violate comity issues and does not entrench on the California Court's decision in, *California ex rel. Lockyer v. U. S. Dep't of Agric.*, 459 F.Supp.2d 874 (N. D. Cal. 2006) ("*Lockyer*").

## ARGUMENT

### I.    Standing.

The Forest Service resubmitted its merit briefs from *Roadless I*, Civ. No. 01-CV-86-B, along with its recently filed supplemental brief. (FS Supp. Br., # 78, at 9). In its prior brief, the Forest Service argued that Wyoming did not have standing to challenge the 2001 Roadless Rule. (FS Br., Civ. No. 01-CV-86-B, Doc. # 139, at 24-28). In *Roadless I*, this Court concluded that Wyoming had standing "because it was adversely aggrieved by the Forest Service's failure to follow mandatory NEPA procedures when it promulgated the Roadless Rule[.]" *Roadless I*, 277 F.Supp.2d at 1215. The Court determined that "there is a real and substantial possibility that forest disease, insect infestation, and wildfires from the non-managed National Forests in Wyoming will spread into Wyoming's state forests that are contiguous to those National Forests." *Id.* The Court concluded that Wyoming's injuries are redressable because the Roadless Rule unlawfully limits the authority of the Forest Service to manage inventoried roadless areas ("IRAs"). *Id.* Additionally, the Court explained that harm to the environment, in Wyoming as well as nationwide, was "presumed when the agency fails to comply with the required NEPA procedure." *Id.* at 1216.

The Courts findings concerning standing in *Roadless I* are applicable to this proceeding. Because the Forest Service failed to comply with the required NEPA procedures when it promulgated the 2001 Roadless Rule, injury to Wyoming is presumed. *See Friends of Marolt Park v. U. S. Dep't of Transp.*, 382 F.3d 1088, 1095 (10th Cir. 2004); *Sierra Club v. U. S. Dep't*

3

*of Energy*, 287 F.3d 1256,1265 (10th Cir. 2002). As set forth in the affidavit of William J. Haagenson (Ex. 1, hereto), and the previous affidavit of Harold Kemp (Wyomings Reply Brief, Civ. No. 01-CV-86-B, Doc. # 210, Ex. 2), Wyoming has been, and continues to be, injured by the 2001 Roadless Rule.

The implementation of the 2001 Roadless Rule and the other roadless initiatives have prevented the Forest Service from conducting active forest management practices in IRAs. (Aff. Haagenson, Ex.1, at ¶ 7). Active forest management significantly reduces the risk of catastrophic fire and insect infestation. (*Id.*, at ¶¶ 7, 8). The failure to actively manage national forest IRAs in Wyoming harms Wyoming's state forests, which are contiguous, adjacent or commingled with national forests because of the increased risk of fire and the spread of disease and beetle infestation. (*Id.*, at ¶¶ 12, 15, 16). Since this Court's previous ruling, the beetle infestation in Wyoming national forests has worsened. (*Id.*, at ¶ 6). Because beetle infestation is not to be treated in IRAs, beetle infestation is more severe in adjacent Wyoming forest lands. (*Id.*). This has resulted in more dead trees in and around state forests and an ever increasing risk of fire. It also permanently altered the forest landscape. (*Id.*, at ¶¶ 13-15). The inability of the Forest Service to actively manage the national forest has irreparably harmed state forest lands. (*Id.*, at ¶ 18).

This Court properly concluded that Wyoming had standing in *Roadless I*. With the reinstatement of the 2001 Roadless Rule, the harm inflicted on Wyoming has returned, and therefore Wyoming has standing to bring this action.

II.    **The 2001 Roadless Rule was Promulgated In Violation of NEPA.**

In its Opposition Brief, WOC argues again that NEPA was not violated by the promulgation of the 2001 Roadless Rule because the Forest Service: (1) properly conducted the scoping meetings; (2) complied with cooperative agency guidelines; (3) adequately considered cumulative impacts; (4) considered reasonable alternatives; (5) was not required to complete a supplemental EIS and, (6) was not required to do site specific analyses. (WOC Br., at 14-44).

WOC presented these same arguments to this Court in its brief in *Roadless I.* (Civ. No. 01-CV-86-B, Doc. # 201, at 20-46). After considering all of WOC's arguments, this Court concluded that there was only a "mere *pro forma* compliance with NEPA's scoping procedures and requirements," the Forest Service's "decision to deny cooperative agency status was arbitrary," that the cumulative impacts analysis was "woefully inadequate," and that the Forest Service intentionally proceeded with the 2001 Roadless Rule "without weighing the pros and cons of reasonable alternatives" in its zeal to implement a predetermined decision. *See Roadless I,* 277 F.Supp.2d at 1220, 1231, 1226.

Before initiating the scoping review, the Forest Service had already set the parameters of the NEPA process, determined the limited alternatives it would consider, and settled on the likely outcome of the rulemaking process. (*See* AR 330, at 1); *see also Kootenai Tribe of Idaho v. Veneman,* 142 F.Supp.2d 1231, 1246 (D. Idaho 2001) (*"Kootenai I"*), rev'd Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094 (9th Cir. 2002) (*"Kootenai II"*). The Clinton Administration attempted to completely alter how one third of the national forests were managed. The new

agenda was "one of the most significant conservation efforts in United States history." (AR 330, at 1). To instigate and insulate the policy shift the Forest Service initiated four separate initiatives, each orchestrated to re-write Forest Service management practices and prevent any further road building and timbering in inventoried roadless areas. (*See* Wyoming's Opening Br., Civ. No. 01-CV-86, Doc. # 184, at 2-41). The Clinton Administration and the Forest Service were pressed to complete this mission in an unprecedented short time frame, because the President was soon to leave office. (AR 2113). Although any one of the NEPA violations discussed below warrant invalidating the 2001 Roadless Rule, the Forest Service's failure to inform the public of the combined effect of its overall plan to re-direct national forest management practices, its refusal to seriously evaluate and consider the environmental impacts across the nation, and its refusal to objectively consider any alternatives to its pre-determined outcome constituted a blatant manipulation of the NEPA processes. There could scarcely be a more fitting example of "mere *pro forma* compliance" with NEPA.

A.      **The Forest Service Violated NEPA's Scoping Requirements.**

WOC argues that the Forest Service met its basic obligations during the scoping process simply by giving public notice that it was considering new development restrictions within IRAs, and that existing IRA forest service maps were adequate to inform the public of all areas that might be affected by the proposed rule. (WOC Br., at 34, 35). WOC does not address the specific deficiencies in the scoping process recognized by this Court in *Roadless I* or the specific problems with mapping discussed in Wyoming's prior briefs. (*Id.*). The Forest Service did not

6

invite Wyoming or the public to participate in the scoping process. It merely broadcast its intended rulemaking agenda and conducted last minute meetings to meet the *pro forma* requirements of NEPA.

The Forest Service is required to involve the public in preparing and implementing NEPA procedures and must invite participation of affected state and local governments. 40 C.F.R. §§ 1501.6, 1501.7(a)(1). This means that "the agency undertaking the action shall engage with other governmental entities in an open and public manner so that they may work together in preparing the EIS." *Roadless I*, 277 F.Supp.2d at 1219, *citing* 40 C.F.R. § 1501.7(a). "[t]he procedural requirements prescribed in NEPA and its implementing regulations are to be strictly interpreted to the fullest extent possible in accord with the policies embodied in the Act." *California v. Block*, 690 F.2d 753, 769 (9th Cir. 1982).

The Forest Service never meaningfully engaged Wyoming in the scoping process and refused to consider or address the issues raised by Wyoming because the outcome was already determined. The scoping period, like all the other NEPA mandated comment periods, was intentionally truncated so the 2001 Roadless Rule would be promulgated before the President left office. (AR 1549, at 2). The Forest Service failed to provide relevant maps preventing Wyoming from meaningfully participating in the scoping period. The limited maps available during the scoping period did not accurately identify the affected roadless areas. (AR 1608). Wyoming and others requested specific maps, but the Forest Service did not provide them. (AR 76, 2113, 2248,

2770, 3450). Wyoming reasonably requested additional time to review the intended agency action, but the Forest Service refused. (AR Ex. 2600).[1]

Wyoming could not determine what specific areas and sections of forest land were subject to the proposed rule because the Forest Service was relying primarily on old RARE II maps which were "deeply flawed." (*See* AR 590, at 3; AR 2297, p. 1).   None of the existing maps identified either the unroaded portions of the inventoried roadless areas or any un-inventoried roadless areas. *See Kootenai I*, 142 F.Supp.2d at 1245, n. 22. The Forest Service published state maps on its website a month after the scoping period was over. (AR 76). But the maps on the website were of little or no value. (*See* Civ. No. 01-CV-86-B, Doc. # 210, Ex. 20). This Court previously concluded that the administrative record was "replete with the Forest Service's own admissions that its data was incomplete, outdated, and simply inaccurate." *Roadless I*, 277 F.Supp.2d at 1220.

The short time schedule established for promulgating the 2001 Roadless Rule was entirely unrealistic. It gave no consideration to meaningful participation by the States or other affected parties. During the NEPA review process, the Idaho Federal Court admonished the Forest Service to proceed in a more informative and cooperative manner. *Kootenai I*, 142 F.Supp.2d at 1246. The Idaho Federal Court noted that in a recent forest salvage sale proceeding, the scoping period alone lasted a year and a half. (*Id.*). There was simply no justification not to follow the letter and

---

[1] Numerous other governmental entities requested additional time and more accurate mapping to learn the effects of the proposed rules and such requests were also denied. *Kootenai I,* 142 F.Supp.2d at 1245-46.

spirit of NEPA unless the final rule was "predetermined in its outcome." (*Id.*). The Forest Service knew the scoping period was inadequate, but to comply with the presidential mandate, it proceeded with inaccurate and incomplete information and without regard to meaningful public participation.

**B.    The Forest Service's Refusal to Grant Cooperative Agency Status Violated NEPA.**

WOC argues that granting cooperative agency status is discretionary and therefore unreviewable by the Court, and that it was impractical to consider specific state issues given the national scope of the rule.    (WOC Br., at 36-39).    Complying with NEPA is not always expeditious or practical, but it is required.

Creating cooperative agency relationships with states helps achieve the purposes of NEPA. (AR 3544, at 2-3).    NEPA regulations emphasize early cooperation in the NEPA process. 40 C.F.R. § 1501.6. Wyoming requested cooperative agency status, along with other most affected states, but the Forest Service refused all requests.    (AR 1362, at S-6, 2-3).

In *Roadless I,* this Court concluded that denying Wyoming cooperative agency status was arbitrary and capricious because it demonstrated that the Forest Service was not, and did not, intend to develop all relevant information that was available regarding the environmental consequences of the proposed actions. *Roadless I,* 277 F.Supp.2d at 1221.    The Forest Service's transparent actions were yet another demonstration of its overall objective to complete the 2001 Roadless Rule in record time, without regard to the NEPA process. *Id.*

9

NEPA does not mandate that an agency assign cooperative agency status to interested agencies. 40 C.F.R. § 1501.6. The problem in this situation is that granting cooperative agency status to the 10 most affected states is the only reasonable mechanism which would have fully informed the Forest Service of the environmental consequences of its actions. As drafted, the 2001 Roadless Rule completely altered how one third of all national forests were managed. The proposed rule discarded and replaced 30 years of forest management practices for over 58 million acres of national forest. Ninety-two percent of the affected forests were in 10 states. *Roadless I*, 277 F.Supp.2d at 1221.

NEPA requires that the Forest Service take a hard look at the environmental consequences of its proposed actions. Because the proposed roadless rule affected such a large swath of territory, the only practical way for the Forest Service to understand the impacts on the affected states was to ask them. NEPA directs an agency to make a meaningful inquiry. However, that is precisely what the Forest Service refused to do, because an inquiry interfered with its underlying agenda. The Forest Service did not have time to allow affected states to participate in the NEPA process and was not interested in accessing all the human impacts of the 2001 Roadless Rule, because it had already determined the outcome of the rulemaking.

C.    **The Forest Service Refused to Consider Reasonable Alternatives.**

WOC insists that the Forest Service considered reasonable alternatives in light of the stated purpose of the proposed 2001 Roadless Rule. (WOC Br., at 16-17). WOC's argument mimics the arguments in its *Roadless I* briefs. (*See*, WOC Br., at 14-21; Civ. No. 01-CV-86-B, Doc.

10

#201, at 27-33). In *Roadless I* this Court disagreed, finding that the Forest Service "did not

provide an adequate discussion of the alternatives[.]" *Roadless I*, 277 F.Supp.2d at 1224.

In reviewing the adequacy of an EIS, a court must examine whether the agency

objectively presented each of the topics which are legally required to be included in the EIS.

*Colorado Envtl. Coal. v. Dombeck*, 185 F.3d 1162, 1172 (10th Cir. 1999). The reviewing court

must look closely at the EIS's purpose to determine if the Forest Service considered reasonable

alternatives. *Citizens' Comm. to Save Our Canyons v. U. S. Forest Serv.*, 297 F.3d 1012, 1030

(10th Cir. 2002). This scrutiny prevents the Forest Service from skirting the NEPA process by

narrowing the purpose of the agency action. *Davis v. Mineta*, 302 F.3d 1104, 1119 (10th Cir.

2002). Applying a rule of reason standard, the court must determine pragmatically whether the

preparation of the EIS and its ultimate form and content fostered informed decision making and

informed public participation. *Colorado Envtl. Coal.*, 185 F.3d at 1172.

From the outset, the Forest Service only intended to evaluate alternatives that eliminated

road construction and timbering in IRAs. (AR 330). The Forest Service implemented an 18-

month moratorium on all road construction in February 1999 to allow it time to implement rules

to make the moratorium permanent. (AR 3440, at 1). By July 1999, the Forest Service had

settled on an overall strategy to promulgate the 2001 Roadless Rule and revise its planning rules

and transportation policy to effectuate its new agenda. (*Id.*). When the scoping process was

initiated in October 1999, the die was already cast. The Forest Service's only goal at that

juncture was to meet the pro forma obligations of NEPA. To minimize and restrict public input,

11

the proposed alternatives only addressed eliminating road constructions and timber harvesting. *Roadless I*, 277 F.Supp.2d at 1226.  Despite receiving over 500,000 comments during the scoping period with numerous suggested alternatives to effectuate the underlying purpose of the proposed rule, the DEIS similarly only addressed eliminating all road construction and timber harvesting, disregarding all substantive exceptions. *Id.*, at 1223.

The FEIS explained that the purpose of the rule was to "conserve and protect the increasingly important values and benefits of roadless areas . . . by prohibiting activities that have the greatest likelihood of degrading desirable characteristics of inventoried roadless areas." (AR 4609, at 114). But the Forest Service refused to consider other alternatives "such as mitigation, geographical scope, and exemptions for specific roadless areas" because it would create an "unmanageably large number of alternatives." (*Id.*).

NEPA required the Forest Service to "rigorously explore and objectively evaluate reasonable alternatives to the Roadless Rule." *Roadless I*, 277 F.Supp.2d at 1225.  The Forest Service should have considered alternatives that would allow temporary road construction for hazardous fuel removal, treatment of beetle infested forests, and other forest health management tools for the purpose of improving roadless characteristics and preventing catastrophic loss. *Id.*, at 1226.   The Forest Service refused to consider such reasonable alternatives, and intentionally crafted the purpose of the 2001 Roadless Rule so that it would only have to consider two basic alternative actions, either prohibit road construction and timber harvesting or do nothing. *Id.*, at 1224.

**D.    The Forest Service Did Not Adequately Consider the Cumulative Impacts of the 2001 Roadless Rule.**

WOC argues again that the Forest Service was not required to consider the cumulative impacts of the comprehensive revisions to the 1982 Planning Regulations (65 Fed. Reg. 67514, November 9, 2000) (Planning Regulations), revisions to the Transportation Policy (66 Fed. Reg. 3219-41, January12, 2001) and alterations to the Road Management Rule (66 Fed. Reg. 3206-07, January 12, 2001), which were all effectuated as part of the comprehensive strategy of the Forest Service to change how IRAs were managed.  (WOC Br., at 22-27; AR 1535, at 2; AR 3440). WOC suggests that a cumulative assessment was not required because: (1) the other initiatives had independent utility; (2) the likely impacts were speculative in nature; and (3) the other roadless initiatives were not fully implemented and therefore assessing their impact was unnecessary. (*Id.*).

WOC's arguments are disingenuous at best and ignore the specific findings of this Court in *Roadless I.*  It is uncontroverted that the 2001 Roadless Rule was only one part of a "comprehensive strategy for accomplishing long-term sustainability of [the national] forests and grasslands." *Roadless I*, 277 F.Supp.2d at 1228, *citing* AR 4153, at 2.  And yet, "the final EIS is completely devoid of any substantive discussion on the Roadless Rule's, Planning Regulations', Road Management Rule's, and Transportation Policy's cumulative effects on the environment." *Id.,* at 1229.

This Court's explanation in *Roadless I* succinctly describes the Forest Service's

miscues:

> According to the Forest Service, the interrelated rules would work as
> follows: (1) the Roadless Rule would permanently halt road construction
> in unroaded portions of inventoried roadless areas identified by RARE II
> and other inventories; and (2) the Planning Regulations and Road
> Management Rule would then provide the process to evaluate extending
> limitations to uninventoried roadless areas. (AR, Doc. 4153, at 2).

> The Forest Service's strategy for implementing these rules proceeded on a
> coordinated basis with separate teams working on each rule, yet routinely
> communicating with each other to make the rules more cohesive. (*See*
> AR, Doc. 77; Doc. 104, at p.2; Doc. 3310; and Doc. 4901; Doc. 5106;
> Doc. 4997; Doc. 5045; and Doc. 5504) As part of the Forest Services
> coordinated proactive strategy to implement the rules in a relatively short
> period of time, it would conduct day-long meetings on the cumulative
> effects of these rules and policies. (AR, Doc. 4803, at p. 1; AR, Doc.
> 4153, at p. 2). Additionally, congressional hearings were held on the
> potential cumulative effects of these three rules and the Transportation
> Policy. (AR, Doc. 2815).

*Id.,* at 1228-29.

The Court then specifically pointed out that:

> The Roadless Rule, Planning Regulations, Road Management Rule, and
> Transportation Policy affect land use and transportation in every national
> forest in the United States. Cumulatively, those rules establish a two-step
> procedure by which current inventoried roadless areas are permanently
> protected and then provide the procedural mechanism for further
> protecting uninventoried roadless areas. More troubling, however, is the
> fact that the Forest Service had devised this "comprehensive strategy"
> even before President Clinton directed it to implement the Roadless Rule.
> Notwithstanding that it was the Forest Service's strategy to promulgate
> three interrelated rules in close proximity, it never informed the American

14

public of the cumulative effects of these rules, or even how the rules
operated together.

*Id.*, at 1229.

Statements in the FEIS down played the impact of 2001 Roadless Rule by ignoring the cumulative impact of all four agency initiatives. For example, the FEIS reported that the proposed alternatives would not result in a loss of "existing roads or trails" and that, "at a minimum, the current level of roaded access to inventoried roadless areas would be maintained." (AR 4609, at 342, 343). Clearly, this was not the intent of the Forest Service's comprehensive strategy. The primary purpose of the Road Management Rule was to decommission unneeded roads. *See* 36 C.F.R. § 212.5(b). The Road Management Rule established additional hurdles and requirements that had to be met to construct a road, after the narrow exceptions in the 2001 Roadless Rule had been met. *Roadless I,* 277 F.Supp.2d at 1229. The four roadless initiatives were crafted to compliment each other and the impact on the public and the environment was significantly greater when considered together. *See Roadless I,* at 1229.

WOC asserts that, because all of the other roadless initiatives were not effectuated subsequent to promulgation of the 2001 Roadless Rule, the Forest Service should be exonerated for not considering their cumulative impacts. (WOC Br., at 25). No case law is cited for this argument, and it is meritless. Forest Service personnel strategized from the outset on how the initiatives would interplay with each other. (AR 4803). During the 2001 Roadless Rule NEPA review process it was anticipated that all four initiatives would be implemented. (*Id.*). NEPA

15

required the Forest Service to inform the public about the interplay of the initiatives and allow the public to comment on it.

**E.    The Forest Service was Obligated to Complete a Supplemental EIS.**

WOC argues that the Forest Service was not required to complete a supplemental EIS. (WOC Br., at 27-32).  WOC's arguments are unchanged from its previous briefs in *Roadless I*. (*See* Civ. No. 01-86-B, Doc. # 201 at 40-45).  Wyoming has already addressed WOC's arguments in its *Roadless I* briefs and its recent supplemental brief. (*See* Doc. # 53; Civ. No. 01-86-B, Doc. #184, 210).  WOC does not raise any new facts or present new law regarding this issue.  More importantly, WOC does not address the factual findings of this Court in *Roadless I*. (WOC Br., at 27-32).

This Court, after reviewing the FEIS and the DEIS, concluded that when the Forest Service: (1) eliminated the procedural aspects of the 2001 Roadless Rule; (2) broadened the scope of the rule by including classified roads within inventoried roadless areas; (3) added 4.2 million acres of roadless areas to the Roadless Rule; and, (4) substantially modified the timber harvest exceptions to the rule, it was required to supplement the FEIS.  *Roadless I*, 277 F.Supp.2d at 1230.

In the FEIS, the Forest Service did not provide a reasoned explanation for these four changes. The lack of a reasoned explanation means that the Forest Service could not have taken a hard look at how the changes impacted the environment. It is self evident that removing the entire procedural component of the rule changes the purpose and scope of the 2001 Roadless

16

Rule, but the issue is unaddressed in the FEIS.  WOC does not address this issue in its brief.
Instead, WOC tries to minimize the impact of subjecting an additional 4.2 million acres to the
requirements of the 2001 Roadless Rule.  First, WOC points out that adding areas with classified
roads within IRAs only subjected 2.8 million additional acres to the new rule.  (WOC Br., at 28).
Next, WOC argues that because most of the 4.2 million acres were subject to local forest
planning restrictions limiting road construction and timbering, the added acreage did not affect
the quality of the human environment.  (WOC Br., at 289).  WOC's characterizations are
simplistic and misleading.

The DEIS contained absolutely no discussion about broadening the scope of the 2001
Roadless Rule so that it applied to roaded portions of IRAs.  Therefore none of the affected
parties had any opportunity to consider, let alone comment, on the impacts of the rule change.
Logically, roaded areas are the most accessible and most used portions of IRAs.  Restricting the
use and reconstruction of existing roads in roaded areas would therefore significantly impact the
public.  The FEIS did not explain how the public or the forest health would be affected by
imposing roadless rule restrictions on roaded IRAs or explain how the other roadless initiatives
would impact the human environment, including the decommissioning of many of the existing
roads.

It is unrealistic to compare road and timber restrictions imposed by forest plans with the
2001 Roadless Rule restrictions.  As explained in more detail below, the prohibitions of the 2001
Roadless Rule are more restrictive in some aspects than the restrictions imposed on wilderness

17

areas under the Wilderness Act. (See p. 22). Forest management plans are significantly more adaptable to local, ecological concerns. For example, since 1982, the Forest Service permitted construction of 2.8 million miles of road in inventoried roadless areas through the local forest planning process. *Kootenai II*, 313 F.3d at 1104-05. Generally, road construction and timber harvest is permissible even in areas where new roads and timbering are prohibited, to harvest recent burn areas, to log or thin areas decimated by beetle infestations, and where necessary to protect general forest health. (Aff. Haagenson, Ex. 1, at ¶¶ 13, 15). Additional roads can be created to meet desired forest management needs so long as they are consistent with the forest plan. *Kootenai I,* 142 F.Supp.2d at 880. None of this is possible under the 2001 Roadless Rule. The playing field is entirely different. Removing an additional 4.2 million acres of forest from existing local forest plans significantly affected the human environment within the added 4.2 million acres.

WOC suggests there was an opportunity to comment on the affects of the additional 4.2 million acres between the publication of the FEIS and publication of the final rule. (WOC Br., at 30). However, the Forest Service did not request comments after the FEIS was published or indicate it would consider additional comments. To suggest retrospectively that comments would have been received and seriously considered is like closing the gate after the cattle have left the pasture. It is contrary to what was understood at the time and therefore irrelevant to the Court's analysis.

F.    **NEPA Requires Specific Environmental Analysis of the Affected Areas.**

WOC argues that no specific statutory language requires specific environmental analyses of forests affected by rulemaking, and that *Block* only requires site specific analysis when the proposed rule may cause environmental injury. (WOC Br., at 40-41). WOC also argues that Wyoming has not identified specific injuries caused by the 2001 Roadless Rule so the limited national perspective set out in the FEIS was sufficient. (*Id.* at 43). Contrary to these arguments, NEPA does require specific environmental analysis and Wyoming has demonstrated (and the Forest Service admitted) that the 2001 Roadless Rule causes harm to Wyoming forests. In *Roadless I,* this Court was reluctant to find that the Forest Service had to conduct a more site specific analysis of the environmental effects of the proposed roadless rule because the Tenth Circuit had not had the opportunity to address the issue. *Roadless I,* 277 F.Supp.2d at 1227.

However, this Court did note that three Federal Circuits required site specific NEPA analysis. *Roadless I,* 277 F.Supp.2d at 1226-7. There was no indication that other circuits have specifically rejected the requirement. *Id.* The facts in this case are indicative of why three circuits require specific environmental review. Without adequate site specific review, the public cannot reasonably be expected to understand the ramifications of the agency action and the agency cannot take a hard look at alternative actions and make an informed decision without knowledgeable public input.

The three circuits that require site specific analysis reached that conclusion by following the same rules of statutory construction that this circuit follows. They require federal agencies to

19

provide a sufficiently "detailed statement" on which the agency's decisionmakers and public can base their conclusions. 40 C.F.R. §§ 1501.2(b),1502.16; *see Conservation Law Found. of New England v. Gen. Serv. Admin.* 707 F.2d 626, 630-31 (1st Cr. 1983); Sierra Club v. Peterson, 717 F.2d 1409, 1414-15 (D.C. Cir. 1983); *Block*, 690 F.2d at 763-64. These circuits reasoned that an agency's duty to conduct a site specific analysis is derived from the obligation under NEPA to "provide a sufficiently 'detailed statement' on which the agency's decisionmakers and the public can base their conclusions." *Roadless I*, 277 F.Supp.2d 1227. This circuit acknowledges that NEPA was created to force agencies to take a "hard look" at the environmental consequences of their proposed actions utilizing public comment and the best available scientific information. *Ass'ns Working for Aurora's Residential Env't v. Colorado Dep't of Transp.*, 153 F.3d 1122, 1129 (10th Cir. 1998). And, it insists that agencies can only make informed decisionmaking based upon informed public comment. *Lee v. United States Air Force*, 354 F.3d 1229, 1237 (10th Cir. 2004). Applying these principles to the facts in this case logically required the Forest Service to conduct more site specific analysis before it could comply with NEPA and make a fully informed decision.

The Forest Service did not adequately inform Wyoming or the general public how the 2001 Roadless Rule would impact the national forests in Wyoming. There was no discussion, analysis or scientific inquiry on where or how the elimination of fuel management treatment would affect the environment in Wyoming national forests. There was no discussion or explanation of how Wyoming forests will be impacted by the elimination of active forest

management with respect to the growing epidemic of beetle infestation occurring throughout the State.

The Forest Service argues that it does not have to consider how the 2001 Roadless Rule will impact Wyoming because it only has to consider the big picture. *See* 66 Fed. Reg. 3245, 3246. However, limiting review only to the big picture is contrary to the purpose of NEPA. Without understanding the local environmental impacts of a national policy, neither the Forest Service nor the public can comment on or make an informed decision about the impacts of a proposed rule. Complying with NEPA by conducting a comprehensive environmental analysis of all significant impacts, with full participation by all affected parties, is all the more necessary when instituting a nationwide rule because the impacts can be significantly different between varying ecosystems, and the number of individuals affected by the rule will necessarily be vastly greater.

### III.    The 2001 Roadless Rule Violates the Wilderness Act.

WOC argues that the 2001 Roadless Rule has less restrictive use requirements compared to restrictions imposed by the Wilderness Act, therefore, the Roadless Rule does not create *de facto* wilderness areas. (WOC Br., at 45-53). Second, WOC asserts that the Wilderness Act cannot be construed as repealing the Forest Service's authority to protect non-wilderness areas granted by the Organic Act. (WOC Br., at 47).

WOC's first argument places form over substance. Despite differences in some exceptions and land use limitations imposed by the Wilderness Act and the 2001 Roadless Rule,

they both are intended to perform the same function, preserve pristine forest lands. This Court specifically compared the uses and exceptions permitted in wilderness areas versus the uses and exceptions imposed by the 2001 Roadless Rule in *Roadless I*. *Roadless I*, 277 F.Supp.2d at 1234-35. The Court found that in some instances the Wilderness Act imposed more restrictive uses and in other instances the 2001 Roadless Rule was more restrictive. *Roadless I*, 277 F.Supp.2d at 1234. The predominant qualification for both classifications was roadlessness. Both are intended to preserve pristine, roadless characteristics. *Id*. Both limit commercial uses and vehicular access. *Id*. This Court concluded that the differences were cosmetic. *Id*. From a practical perspective they do the same thing and effect people in the same way. *Id*. The 2001 Roadless Rule was enacted to create *de facto* wilderness.

   In its second argument, WOC argues that the Wilderness Act did not revoke the authority of the Forest Service to create de facto wilderness areas. WOC believes the Organic Act grants such authority. (WOC Br., at 478). WOC's argument is wrong. The Wilderness Act was passed specifically to limit the discretionary power of the Forest Service and prevent the Forest Service from creating wilderness areas. *Parker v. United States*, 309 F.Supp. 593, 597 (D.Colo. 1970); *aff'd* 448 F.2d 793 (10th Cir. 1971). Therefore, WOC's arguments describing constructive repeal are irrelevant to this case.

   The Wilderness Act provides that "no Federal lands shall be designated as 'wilderness areas' except as provided for in the [Wilderness Act] or by a subsequent Act." 16 U.S.C. § 1131(a). The Wilderness Act was specifically crafted to prevent an agency from making

22

"wholesale designations of additional" wilderness areas. *Roadless I*, 277 F.Supp.2d at 1233, *quoting* H.R. Rep. No. 88-1538.

The 2001 Roadless Rule creates wholesale designations of wilderness type areas and therefore it violates the Wilderness Act. That is precisely what the 2001 Roadless Rule was intended to do. *See Kootenai II*, 313 F.3d at 1121 (The 2001 Roadless Rule "help[s] conserve some of the last unspoiled wilderness in our country.").

IV.    **The 2001 Roadless Rule Violates the Wyoming Wilderness Act.**

WOC relies on the broad interpretation of "multiple use" as applied to MUSYA, to argue that the 2001 Roadless Rule does not violate the WWA. (WOC Br., at 62). WOC ignores both the language and intent of the WWA. The WWA specifically restricts treating remaining IRAs in Wyoming like wilderness areas. WWA, § 401(b)(3), (5). The very purpose the 2001 Roadless Rule is to preserve the "wilderness characteristics" of IRAs. (AR 4609).

Because this Court has previously found the 2001 Roadless Rule violates the Wilderness Act by creating *de facto* wilderness, the 2001 Roadless Rule must violate the more specific provisions of the WWA. The WWA specifically identified 3 million acres of Wyoming national forests which could not be treated as wilderness area and must be used for multiple use. (Aff. Haagenson, Ex. 1, at ¶ 17). The 2001 Roadless Rule classifies the same 3 million acres as *de facto* wilderness.

## V.    The 2001 Roadless Rule is Contrary to the NFMA.

WOC suggests that this Court's holding in *Wyoming Timber Industry Ass'n v. U. S. Forest Serv.*, 80 F.Supp.2d 1245 (D.Wyo. 2000) ("*WTIA*") is dispositive on the whether the Forest Service violated NFMA. (WOC Br., at 53). WOC also argues that the Organic Act allows the Forest Service to disregard the strictures of NFMA and promulgate rules that substantially overturn existing forest plans. (*Id.*). WOC's interpretation of *WTIA* and its explanation of the interaction between the OrganicAct and the NFMA are both incorrect.

In a single stroke the 2001 Roadless Rule changed the management requirements for 58 million acres of national forest. This violated the mandates of Congress established by the enactment of the NFMA. Furthermore, this Court's holding in *WTIA* has no application in this case because of the directives established by Congress when it enacted the NFMA and the rules of statutory construction.

The NFMA was enacted after the Organic Act. Although both are directed at managing national forests, the NFMA is clearly more specific. Statutes addressing the same subject matter should be read as if they were one law. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 313 (2006). If two statutes appear to conflict with one another, the more specific statute controls over the more general one. *Watt v. Alaska*, 451 U.S. 259, 266 (1981).

As described in Wyoming's Supplemental Brief, Congress was very specific when it enacted the NFMA by establishing particular procedures for creating and amending local forest plans. *See* 16 U.S.C. § 1604(d), (f). The Forest Service must comply with the NFMA when it

proposes a use that is inconsistent with the forest plan by formally amending the plan. (*Id.*). The clear intent of the NFMA is to force the Forest Service to involve the affected public before significant changes in forest management can be made. (*Id.*).

The Court's finding in *WTIA* merely stands for the proposition that agencies can promulgate reasonable rules to effectuate their statutory mandates. *WTIA*, 80 F.Supp.2d at 1260. Although the Forest Service has the ability to promulgate reasonable rules and regulations pursuant to the Organic Act, such authority is tempered by subsequent laws that specifically instruct the Forest Service how to accomplish particular tasks. The Forest Service violated the NFMA when it significantly modified all forest plans by changing the management guidelines for 58 million acres of IRAs with the promulgation of the 2001 Roadless Rule.

## VI.    Enjoining the 2001 Roadless Rule Nationwide is Required

The Forest Service and WOC reassert their previous argument that if the Court grants injunctive relief, it should be limited to the boundaries of Wyoming. (FS Supp. Br., at 10-14; WOC Br., at 73). California, New Mexico, Oregon and Montana filed a joint *Amici Curiae* brief asserting the same position. (Doc. # 48). Their respective arguments do not make sense in the context of this case.

Section 706 of the APA governs judicial review of an agency action under NEPA and the Wilderness Act. *See S. Utah Wilderness Alliance v. Norton*, 301 F.3d 1217, 1238 (10th Cir. 2002) (rev'd on other grounds); *Parker v. United States*, 448 F.2d 793, 795 (10th Cir. 1971). The APA mandates that this Court set aside the unlawful rule because a regulation not

25

promulgated in accordance with the law may not be afforded the force and effect of law. *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979). A court has a mandatory, non-discretionary duty to set aside agency action found to be promulgated in violation of the APA. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999); *N.M. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1285 (10th Cir. 2001).

The Tenth Circuit case most analogous to this case is *Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th 1999). In *Forest Guardians* the Secretary of Interior sought to maintain in effect a rule that the lower court determined was promulgated in violation of the ESA using the equity powers of the court. *Forest Guardians*, 174 F.3d at 1192. The Court, after examining the language of § 706 denied the Secretary's request because, "[t]hrough § 706 [Congress] has stated unequivocally that courts must compel agency action unlawfully witheld" and "has explicitly removed from the courts the traditional equity balancing that ordinarily attends decisions whether to issue injunctions."[2] *Id.*

Wyoming respectfully submits that if the Court again concludes that the 2001 Roadless Rule was unlawfully promulgated in violation of NEPA, the Wilderness Act and § 706, the only appropriate remedy is to permanently enjoin the 2001 Roadless Rule nation-wide.

---

[2] United States Supreme Court Cases supporting the proposition that Congress can expressly restrict the court's jurisdiction in equity by making injunctive relief mandatory for a violation include *Amoco Prod.Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987), *and Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978).

**VII.     Enjoining the 2001 Roadless Rule is Consistent with Comity Principles.**

The Forest Service, WOC and others argue that enjoining the 2001 Roadless Rule nation-wide would violate principles of comity because it would be in conflict with *Lockyer*, 459 F.Supp.2d 874 (N.D. Cal. 2006). (FS Supp. Br., at 10; WOC Br., at 73-76; Amici Br., at 6). The Forest Service also suggested that if this Court issued a nation-wide injunction, it would prevent the United States from litigating "issues in multiple districts and circuits," and "thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." (FS Supp. Br., at 12-13). Again, these arguments simply do not fit the circumstances in this case.

Principles of comity only come into play when a sister court has previously ruled on the same issue involving the same parties. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). That is not the case here. The issue in *Lockyer* was the legality of the State Petitions Rule. *Lockyer*, 459 F.Supp.2d at 879. In this case the Court is reviewing the legality of the 2001Roadless Rule. The *Lockyer* Court merely re-instated the 2001 Roadless Rule, it did not consider whether or not it was properly adopted under NEPA. *Id.*

Additionally, it is clear that the California Court abused its discretion when it reinstated the 2001 Roadless Rule. The California Court reinstated the 2001 Roadless Rule because it believed that was the rule in effect immediately before the State Petitions Rule went into effect. *Id.* at 918. However, immediately before the State Petitions Rule went into effect, forest management was being conducted pursuant to individual forest plans because the 2001 Roadless

Rule had been permanently enjoined. If there was a breach of comity, it rests on the *Lockyer* court for its intentional disregard for this Court's *Roadless I* decision and the status quo prior to the State Petitions Rule. The *Lockyer* court clearly abused its discretion when it reinstated the 2001 Roadless Rule.

Regardless of the *Lockyer* court's error, in this instance comity principles are not violated. If the 2001 Roadless Rule was promulgated in violation of NEPA, it is void from its enactment and must be permanently enjoined. The findings of the *Lockyer* court have no bearing on this issue because the legality of the 2001 Roadless Rule was never before that court.

(Intentionally Blank)

28

## CONCLUSION

For the reasons set forth above, and in Wyoming's Supplemental brief and the briefs filed in Civil Docket # 01-CV-86-B, Wyoming respectfully asks this Court to declare that the 2001 Roadless Rule is arbitrary, capricious, an abuse of discretion, and not in accordance with law. In adopting the 2001 Roadless Rule, the Forest Service acted in excess of its statutory jurisdiction and failed to observe the procedures required by law. Therefore, the 2001 Roadless Rule should be declared unlawful, vacated and its implementation should be enjoined.

Dated October 8, 2007.


Bruce Salzburg
Attorney General


Jay Jerde
Deputy Attorney General

Robert Nicholas
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, WY 82002
Telephone: (307) 777-6942
Facsimile: (307) 777-3542

Attorneys for Appellant
State of Wyoming

29

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 8, 2007, the undersigned filed the foregoing STATE OF WYOMING'S REPLY BRIEF, with the Clerk of Court using the CM/ECF system which will send notification of such to the following email addresses:

Barclay T. Samford
1961 Stout Street, 8th Floor
Denver, CO 80294
Email: clay.samford@usdoj.gov

Andrew E. Hartsig
James S. Angell
Earthjustice Legal Defense Fund
1400 Glenarm Place, Suite 300
Denver, CO 80202
Email: ahartsig@earthjustice.org
Email: jangell@earthjustice.org

Douglas L. Honnold
Timothy J. Preso
Earthjustice Legal Defense Fund
209 South Wilson Avenue
Bozeman, MT 59715
Email: dhonnold@earthjustice.org
Email: tpreso@earthjustice.org

Timothy R. Odil
Paul M. Seby
McDenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
Email: todil@mckennalong.com
Email: pseby@mckennalong.com

Harriet Hageman
Hageman & Brighton, PC
222 East 21st Street
Cheyenne, WY 82001
Email: hhageman@hblawoffice.com

Paul A. Turcke
Moore Smith Buxton & Turcke
950 West Bannock St., Suite 520
Boise, ID 83702
Email: pat@msbtlaw.com

Reed Zars
910 Kearney Street
Laramie, WY 82070
Email: rzars@lariat.org

Claudia Polsky
State of California
Department of Justice
1515 Clay Street
P O Box 70550
Oakland, CA 70550
Email: Claudia.Polsky@doj.ca.gov

30

Brent Kunz
Hathaway & Kunz, PC
2515 Warren Ave, Suite 500
Cheyenne, WY 82001
Email: Bkunz@hkwyolaw.com

Candace F. West
Attorney Generals Office
State of Montana
215 N. Sanders
Helena, MT 59620
Email: cwest@mt.gov

Stephen R. Farris
Assistant Attorney General
Director, Water, Environmental and
Utilities Division
New Mexico Attorney Generals Office
P O Drawer 1508
Santa Fe, NM 87504
Email: Sfarris@ago.state.nm.us

Judith Ann Moore
Assistant Attorney General
Water, Environmental and Utilities Div.
New Mexico Attorney Generals Office
P O Drawer 1508
Sante Fe, NM   87504
Email : Amoore@ago.state.nm.us

David E. Leith
1162 Court Street NE
Salem, OR 97301
Email: david.leith@doj.state.or.us

Steven W. Strack
Deputy Attorney General
Office of the Attorney General
Natural Resource Division
P O Box 83720
Boise, ID 837200010
Email: steve.strack@ag.idaho.gov

Keith Burron
Associated Legal Group, LLC
1807 Capitol Ave., Suite 203
Cheyenne, WY 82001
Email: kburron@associatedlegal.com

Robert Nicholas
Senior Assistant Attorney General
Wyoming Attorney Generals Office
123 Capitol Building
Cheyenne, WY 82002
(307)7776942 Telephone
(307)7773542 Facsimile
Email: bnicho@state.wy.us

Attorney for the State of Wyoming

31